182073 and 182163 David Giguere v. Port Resources Inc. Good morning. May I have three minutes, please? Yes. May it please the Court, my name is Timothy Norton. I represent Port Resources, the appellant in this case. We're here to discuss the district court's decision on summary judgment, applying a provision of the Fair Labor Standards Act to the question of whether or not undisturbed sleep time is to be compensated, and perhaps more specifically, the application of 29 CFR 785.23 to that question. The first issue, of course, is whether or not that CFR provision is controlling on the Court. The answer to that is that it was an interpretive ruling, interpretive regulation passed by the Wage and Hour Division, but it is instructive, and I think the case law of the Eighth Circuit, Bouchard decision, and others have said that that provision appears to be reasonably tied to the provisions of the Act. If we then move beyond section 785.23 to the instructive rulings, the opinions, and other materials that the Wage and Hour Division has published over the years that the district court relied on, we get into the question of what is an extended period of time, because that's the magic question for purposes of this analysis. Whether or not these employees, and there are some 400 of them in Port Resources operations, excuse me, 200 of them, with some 400 customers, developments with disabled residential homes. The question is whether or not these employees are residing on the employer's premises for, quote, an extended period of time. The district court looked at several publications, including the 1981 Wage and Hour publication and the 1988 publication, and seized on a sentence in the 1988 publication to conclude that the extended period of time analysis must all fall within a work week, within a work pay period. That conclusion is not supported by, it's certainly not supported by the 1981 publication. We submit it's also not supported by the restated, refined and restated provisions of the 88 publication. And it's also not supported by the many publications that... They reside on the premises for an extended period of time within the meaning of the relevant CFR. If the employee resides on the premises for a period of at least 120 hours in a work week, I had thought the case actually was more about the work week definition and whether the employer's choice to use a particular work week constituted the work week for purposes of this 1988 guidance. It then goes on and provides two hours in each of five consecutive 24-hour periods. That does not refer to a work week. But the second one does, or I think it does. The employee sleeps on the premises for all sleep periods between the beginning and end of this 120-day period, which seems to be a reference back to the 120 hours in a work week. And so the district court more or less read this the way I've just suggested to you. What is the problem with that reading? I disagree that that's the correct reading. The district court focused on the word this in that last sentence, this 120-hour period. It is our view that the word this in that sentence means the preceding sentence that shows right before that, which talks about five consecutive 24-hour periods, which doing the math, five times 24 is the correct one. We know because when we move forward into the 1999 Wage and Hour Guide, the exact same analysis is framed as follows. The employee is on duty at the group home for five consecutive days and nights or resides on the premises at least 120 hours per week. If we give any effect to the word or in that sentence, then the standard has to We know that's correct because if we move forward in time to the 2014 administrator's interpretation, that's exactly what it says. That five days a week, 120 hours or more. This argument depends on how we construe the 1988 document. On you reading, you tell me if I'm right about this, on you reading, you tell me if I'm right about this, WHS is restating the minimum conditions required to meet this rule. This rule must be on your reading a reference to the CFR provision and not to the body of text right above. Is that right? Yes, it applies to this rule meaning 785.23. And not the body of text that's right above that? That's right. And how are we supposed to know? Because it says WH is refining and restating the minimum conditions. To meet this rule? But arguably what they've stated right above that is a rule, no? Well, it's refining and restating and I think when you say I'm going to refine and restate, I then look at what you say next, which is you're going to refine, you're going to tell me. No, no, what I'm saying, what is it that I'm refining and restating? Suppose they had just the paragraph above. Isn't what follows that first paragraph under circumstances where an employee does not maintain his or her permanent residence? Isn't what follows arguably refining and restating that? I think that what follows is the minimum conditions required to conclude whether or not there is an extended period of time. So you're determining, and if you go back to the 1981 publication, it actually says at the end of the next, of the final... Well, see the reason why I say, that first paragraph is talking about 120 hours of time. In the 88? Yeah, in the 88 memo. Before we get to the sentence WH is refining and restating the minimum conditions required to meet this rule, there's a paragraph that is referring to 120 hours. Yes. Well, couldn't you read the next, what follows, this is how I understood the district court to be reading it, what follows is refining and restating what is meant by 120 hours. You read it to say, no, you're refining and restating the reference to extended period in the rule in the CFR, but the district court, I think, read it to say, this is just telling you they're refining and restating what that 120 hours are that they just described in the paragraph above. Well, I make two points to that. First of all, that's not repeated in any subsequent guidance that the Wage and Hour Division provides. To the contrary, they repeatedly say four more times in publications, or five consecutive days or nights. In a week. No, it does not say in a week. It says, or five consecutive days or nights. Not in a week? No. If you look at the 1999 guide, the 2014 interpretation, the 2016 bulletin, and the field manual, they all say, or five consecutive days or nights, period. And then I have to take you back to the 81 statement, because we can't jump over the fact of what is the analysis we're trying to do here. We're trying to determine whether or not an employee is living in a place which has a duration of stay long enough such that that presence on the premises is the equivalent of a second residence. And the 81's opinion ends the last paragraph on the first page by saying, in light of the amount of time they spend at the group home, it is, in effect, a second residence. That's the substantive question we're trying to determine by applying these rules. When you overlay a work week, it makes no sense. It has no bearing on whether or not the duration of the stay is long enough such that this is the equivalent of a second residence. Could you go back to the 1988 memo? In response to Judge Barron's question, you're making a point, which I think your brief makes, that the refining and restating paragraph referenced this rule is to the regulation, not to the prior paragraph in that 88 memo. And if that's correct, then how do you make sense of the end of that paragraph where it says this 120-hour period? Because as I understand it, the reg does not have a 120-hour period, which would seem to suggest that this 124-hour period is, indeed, therefore referring to the prior paragraph in which there is a 120-hour period. Well, there is a 120-hour provision in the immediately preceding paragraph, the paragraph 1, which says five consecutive 24-hour periods. Five consecutive 24-hour periods is 120 hours. And then that matches perfectly with all of the subsequent guidance, which stop when they say five consecutive days or nights. What's your account on this of why they included the word work week in that prior paragraph? Because the way it sounds like you're arguing is that what they were announcing to the world is that they were abandoning a prior construction of the rule in which it would be dependent on work week and embracing a new understanding in which it would not be. And that's just a fairly subtle way of making such a significant change. Well, I agree with you, Your Honor, and that takes us into the whole issue of deference and whether or not this is a reasoned analysis. My answer to your question is I don't know. But wouldn't that one lead one to think that that's not what they were doing? That they're just actually explaining the 120 hours within the work week because then we don't have to attribute to them this odd abandonment of a prior position that's done so subtly. The answer, the 88 publication, to me, the appearance of the word work week, first of all, it doesn't flow from the 81 publication. We know that. And it doesn't find itself in any of the subsequent ones. So it doesn't, I can't answer that because there is nothing in the regulations for the publication. But it hardly seems accidental because they make a direct, they have a definition of it. It's not like they just, whoops, I included an extra word there. They're really pretty intentional about using the word work week and telling us what it means. That is true. But if they were that intentional of using it in that publication, it is noteworthy that they were so, that they did not use it again ever in any subsequent publications that we cited to. The word work week does not appear again in any subsequent provision. And I would point out that what that leads us to is if you had an employee that worked 10 days, seven in one work week, and three in another, under this reading, the employee would be entitled to be paid for sleep time in one week and not in the other. I mean, that simply makes no sense. I have a question for both, it's the same question for both sides. Suppose, just assume that we were to view the cumulative handiwork of the DOL on this issue and all its writings to be ambiguous. What rule of construction or tiebreaker, if any, would you say becomes applicable at that point? Well, I would look at cases like Bouchard, I would look at cases like Shannon, a district court case out of Pennsylvania, in which those courts found that five consecutive nights to be a reasonable extended period of time for purposes of this regulation. I think that is a reasonable construction of what it is we're trying to measure here. I think you're deflecting my question. Suppose we find it ambiguous in the sense that your position is reasonable and the plaintiff's reading is reasonable. If we were to find both reasonable, what are we to do at that point? I think under Skidmore you then go look at the agreement that was reached between the parties. Because if we go all the way back to Skidmore, we start with the assumption that any reasonable agreement between the parties is enforceable in regard to sleep time issues. I don't understand that answer at all. If there is an ambiguity about the meaning, don't the canons tend to favor a construction which helps the workers? No, actually, I think if you look at a number of cases... No, this isn't a question of whether there's a reasonable agreement. This is if it is ambiguous, and it may not be because it may point more to one interpretation than another. But if it is ambiguous, what canon of construction do we apply? Well, at the end of the day, I think if it's ambiguous and it becomes a factual question, then I think it gets remanded to the district court to take evidence on that issue. I think you're still dodging the question. You're dodging, yes. We've got a reg. We read it. It could be A. It could be not A. I could take a coin out of my pocket, but I don't see any precedent that says that's the way I'm supposed to resolve it. So what do I do? I think you... In certain areas of the law, for example, under Arnold, if this were one of the exception clauses narrowly defined under the FLSA, then I have a Supreme Court case that tells me narrow construction. And so, aha, I grab hold of that. I don't see any argument that you're asking us to apply Arnold in this situation. So I'm then left with, well, what are you, as either side, asking us to apply in that situation, assuming, and I know you both disagree, but assuming that we decided that it was somewhat in equipoise as to which reading was more reasonable. Well, I would continue to go to the multiple of publications from the agency as one thing for you to look at, the repeated use of the term five consecutive days and nights. I think you are ultimately looking at the question of interpreting the term extended period of time, and it's hard to imagine that five days and nights at a facility, or in this case, the facts of this case, seven days and nights, which is an undisputed fact in the case. You can't have more than that. You can't have in a work period. You could have them every week. You know, you can extend over a period of time, like that could happen, well, actually, the pay periods in this case, the parties were paid every two weeks. But the seven-day period for a shift is, you know, is about as long as you could possibly have. Could you have a thought as to whether it would make sense to ask DOL here what they meant by the 1988 guidance? I mean, we're sort of, we've got a general interpretive reg, and then we have a gloss on the reg. The interpretive reg is unclear, and the gloss is unclear. So if you want us to decide the case the way you're presenting it to us, do what DOL told you to do in clarifying the unclear reg. If our answer back to you is, I don't know what DOL was telling me to do, wouldn't one answer be, let's ask DOL? Yes. I mean, that would be, I don't think you need to do that, because I think the guidance in its cumulative form is sufficient to give you the guidance you're looking for. But in the absence of that, getting what DOL had to do from the source. If we ask DOL, there's a period of at least months before there's a reply. The plaintiffs, I assume, have not yet been paid any of the deferred compensation. And then there is the question, if the Supreme Court is about to take our away, whether the new interpretation would have any value other than how reasonable or persuasive it is. So there is a sort of serious pragmatic issue about whether it's worth the candle to do that. I'm not disagreeing with you, Judge. I'm just saying that if we at the end of the day can't determine what DOL intended, that is one solution to ask them. But I agree, I checked on the way down this morning to see if there was a decision. I see none yet. So we're not the only ones waiting with bated breath. Okay. Thank you. Good morning, Your Honors. Andrew Schmidt for the plaintiffs. I'm going to start in the weeds where my brother left off to try to explain exactly what DOL was doing in the 88 Memo. The 120-hour rule in the 81 letter was saying you have to work for this 120-hour period. But then they created an exception to that to basically give you a break on that last Friday night. So you wouldn't actually be there for the full 120 hours. So that's why it's five days or five nights. If you just work five days and only four nights, that's not quite 120 hours. So that's what they were getting at. They were making it easier. It's still inside the same work week. It's just they're cutting everybody a break because it doesn't make sense to force the person to work there to stay overnight for no reason if no one wants them to be there. Now stepping back to what they're doing in this whole thing. The starting premise in the FLSA is that when you're engaged to work on the premises, even overnight, you are engaged to work. It is work time, except for two exceptions. There's what I call the duty station exception, which is 78522. And that's for tours of duty of 24 hours or more. And that's what we should be here talking about because that's the relevant rule. Well, the defendant here affirmatively conceded any reliance on that rule and instead is sticking a square peg in a round hole trying to say that these people who are at a duty station are in a residence. And the U.S. DOL, the reason they have this residence rule in 78523 is because when you work at a residence and the cases they cite for that rule are the workers in an oil field that are there forever, for months and months, or the telephone switchboard operator, which doesn't really exist, but you can imagine a prep school dorm parent. It's their home. They have their families there. They have time to work. And they cite this right in the rule about that ordinarily he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertainment. So that rule isn't what's happening here. These people are stuck working so hard that they then need seven whole days off. When DOL got into the weeds here, they were imagining a cycle of time, and they were concerned with the pattern of occupancy, and they expected that the workers would work five days on, two days off, five days on, two days off. That's what they were getting at, not this other situation. Does it follow from that that then there's no anomaly about applying work week in the sense of payroll period because it's not going to lead to the odd? They weren't contemplating situations in which you could get the odd situations that your opponent is saying follows from your interpretation. Exactly. They were imagining, and they set out the model schedules, and that's what most of the industry uses is five days on, two days off, five days on, two days off. Actually, I don't want to say most of the industry. But from that point of view, then it won't matter which seven days the employer chooses as the payroll period because they're basically inhabiting the place in the same manner all the time. Is that the idea? Yes, and the reason they use work week is because it's their standard unit of measure. But the great thing about the work week is that the employer has the flexibility to choose it. They just have to do it in the first place so that there's no gamesmanship after the fact. Here's what I understand to be the other side's best argument, so tell me what you think of it. It's that what we're trying to interpret at root here with agency assistance, if we can get it, is what extended period of time means. And one thing everybody tells us is that 120 hours in a week, five nights consecutive in a week, in a work week, is deemed to be an extended period of time. If it's the sort of extensiveness of the time that we're looking for, it would then seem odd that eight straight nights would not be extended. And under your interpretation, eight straight nights would not be covered, it would not be deemed extended as five nights if they straddled the two different work weeks. So what's your response to what seems to be somewhat of an anomaly that five would be extended but eight would not be? Because when they're looking at the five days in a work week, it's basically a proxy for looking at time over time to figure out if you're spending the majority of your time in each week there. But we know that they're not just thinking about one individual period of time for two reasons. First, as I said in my 28-J letter that I apologize was last minute, in a related fact sheet, 79-B, about domestic service workers, they first borrowed the same concept of 120 hours in five days or nights. And then they said, but a period of two weeks would not be enough, because that is not what reside, that is too temporary to signify reside. And another way we know this is because everyone operates under the assumption that if a worker were to miss one day in the middle of their tour because they were sick, nobody has to go back and pay them for the previous overnight time. Because what they're looking at is the intention ahead of time to have a pattern of occupation, not just an individual period. So if a worker quits on day five, I don't think they get paid for that whole time, because ahead of time they intended it to be a residence. So what happens if five consecutive nights in a 120-hour period in work week one, you're there? Work week two, you have off. You don't have to be there at all. Work week three, you're there, just like work one, and so on, periodically throughout the year. So you're there five days a week, 26 weeks during the year. Would that be covered under this? In my brief, I said it would. Now I'm not as sure. Because that seems a little odd then, someone who was there. Right. So my current answer is it might get through the technical wording of this to survive this level of the analysis, but that a court should still conclude that that is not a residence because the person, for other reasons, that it's not a residence as this rule contemplates. So you seem to be focusing us not just so much on the peculiarity of the work week, but on the non-regularity, repeating on a weekly basis of the extended stays? That's correct. That is the whole purpose of this. And what authority is there for that? It is getting to the word reside in 78523. And this is a proxy for reside. Correct. And you're saying the use of the word work week is a tip-off that that's what they were thinking about with respect to this rule? That's correct. Does the word work week apply in the duty station, Greg? No, it does not. There's no guidance that uses the word work week in that context? No, and they specifically don't. So that would be further to the point that they weren't thinking of regularity there. Exactly. But they were with respect to reside here, so it would be natural to talk about work week. Correct. And that rule is the one that's undergirded by Skidmore. That rule is for firefighters that are stuck there for a tour of duty. Interestingly, it has extra strictures, such as five continuous hours of sleep, versus in the other rules you have to show that people can get some amount of sleep, but it doesn't have to be continuous. So perhaps that's why it was waived here. We don't know. We didn't get to that. The court did say that there would have survived some adjustment under that rule. But I guess your own confusion, in which I appreciate you came to about it, about how to treat a person who's in this situation where it's half the year they're living in a place, but it's not January through June, it's every other week. Are they residing? You acknowledge that's kind of a tricky question. And if it is a tricky question, then we are sort of stuck right back where we were at the beginning of this argument, right? It could be a tricky question, but I think especially here, and I realize getting into this particular case, it's about Mike, but where they're stuck working so hard during one period, it's a sign that it's a duty station and not a residence. Maybe the argument would be precisely because you get the anomaly that they're identifying by treating this type of circumstance as subject to the workweek rule, you'd say that shows you're in the wrong rule. You should be in the duty station rule for a circumstance like this. I didn't quite understand, but I'm going to say yes because you seem to be helping me. That's a risky tactic. It turned out to be accurate here, but since you explained why you said yes, it doesn't help you very much. Sorry, can you say it one more time? If I follow your argument, the anomaly that they point out from applying the workweek test to this circumstance, you're basically saying yes, it doesn't make any sense to do that. But precisely because it doesn't make any sense, that's an indication you shouldn't treat this circumstance as subject to this rule. It's really an example that should fit in the duty station rule because it's not residing. Because a true case of residing, you won't have those anomalies. Exactly. Okay, so he argued that as to the correct reading of this, that there were further guidances in 1999, 2014, 2016, which have no reference to workweek and use or, not and, and simply refer to five consecutive days and nights. What is your response to that? I don't deny that some of the further guidance is a little bit sloppy. But in 1988, they went back and carefully talked about the issue on point for people who have a different primary residence. They made a definition of workweek. They said in their guidance that they are clarifying because of some confusion. It is the most careful guidance of everything. It is done with a lot of thought. It gets whatever kind of deference is going to exist when you write this opinion. All right, now I can see where you're going, but let's go back to the panel's sense that there may be an ambiguity here. And if there is, is there a rule of construction, part A, that would help us with that? And part B, should we ask the agency for its views? We filed this case in 2016, and these workers have not been paid for their work. The defendant could have asked for intervention at an early date, and it seems unfair at this point because it would take many months. And as you said, we already have the most—we have their— I guess it depends on how aggrieved you think it is, but I think we have their opinion already. We have their recent fact sheet. I think we should stick with that. On the first point about construction, Your Honor said it well, that it's a remedial statute that should be decided for the workers. Judge Barron, in the famous Kama case, explained it well in her memo that it's the same principle. I will acknowledge that there was a recent Supreme Court case that I cannot remember the name of, where in overtime exemptions, they softened that rule a little bit. But here, I think that that general—if it's a tie, my client should win. Yes, the Kama case is very famous. I hadn't anticipated it would come up, that argument, today. My failure. On this theory you were talking about before, that there has to be some regularity to the weeks that go on, if that were DOL's view, it would seem very odd that they didn't tell us or tell anyone how many weeks have to go. Well, they do in this recent fact sheet. They said two weeks would not be enough. I can—if I were to— And then guess and cross your fingers if it's more? If I were to have written the rule, I would have made it more clear. I think everybody here would have. As we all know, that doesn't always happen. Any further questions? And does any degree need to get into the state law? Anybody have any questions on that? I think you should rely on your brief. Okay, thank you. I went back and looked to make sure that I was right about the subsequent pronouncements. And taking an example, the 2014 Administrative Interpretation says, and I quote, an employee who lives on the employee's premises for extended periods of time rather than permanently, i.e., for five days a week, 120 hours or more, or five consecutive days or nights, regardless of the total number of hours, period. If that word has meaning— See, the problem is I think there's just two words there in what you just read that arguably support the other side, one of which is lives, and the other is a week, because that has the idea of regularity as opposed to in a week. So if you look at the rule here, you just notice it says in the 1988 memo, it says under circumstances where an employee does not maintain his or her permanent residence and does not otherwise reside on the premises seven days a week. And then later it shifts to 124 hours, 120 hours in a work week. So I guess what the idea would be is to refer to a—if you do it five times a week, that's the idea of regularity, which would be consistent with living and residing. And then when we try to figure out the period during that continuous residing, it would make sense to talk about the period in a work week, because it would be regular. Now, I understand that, as your opponent suggested, what do you do when it's 26 weeks every other week? Because applying the work week test does then give the anomaly, rise to the anomaly that you're talking about. But I'm just not sure whether that should drive the interpretation of the rule entirely. I think the interpretation of the rule should be driven by the underlying concept that we're trying to get our arms around, which is, is this person staying at this premises for a sufficiently long period of time that it can be treated as if it's their second residence? That's what the 1981 guidance said. And then that's—then when we apply the OR provision of the language I read to you, it could be 120, 520-hour periods. Or if you stay there for five consecutive nights or five consecutive days, then you're residing there for an extended period of time. And it makes no difference whatsoever whether it's in pay period A or pay period B. And I would point out that all of these guidances from the work week and hour provision give examples. And nowhere in any of those examples does it mention what the pay period is, the work period, the work week is, to apply to this example they just gave us. It says you work X to X and it qualifies, or you work X to Y and it doesn't. Nowhere did they feel the need to say, and in applying this analysis, this example, you need to know that the pay period is Saturday to Sunday. Isn't this the ambiguity here to the extent it snares an employer? Is it likely only to snare an employer who is sophisticated enough about the ins and outs of FLSA rules to try to take advantage of offsetting the work through the work week as your client did here? Well, you know, I point out that's an important issue. The district court sort of suggested that, but there's nothing in the summary judgment record that supports that conclusion. And in fact, after the trial, at page 297 of the transcript, she actually concluded to the contrary that court resources did not do that. So I ask you to be careful about that suggestion. I reread it several times in the way the district court wrote it. I kind of came up with the same in the K-2 provision, but she did not ultimately reach that conclusion as a matter of fact in the case and reached the contrary conclusion. In one of the publications, it appears there was some publication by Anchor or someone out there who could be read as telling employers that the plaintiff's view of that regulation is correct. And there's another item that tells that there's a hotline or phone line that employers can call DOL to ask questions. The Anchor provision is a trade publication, so I don't think that's entitled to any deference. The e-laws and the handbook, which are DOL publications, both use that language that I quoted almost word for word. But is this the type of thing you could call up DOL and ask them before to make sure you got it right? I don't know the answer to that. I assume you could submit for a letter ruling, but I'm not sure about it. Maybe we should use the hotline instead of that. Only if we identify to all parties involved that we are recording it to make it part of the record. Otherwise, it violates Massachusetts law for us to do that. Okay. I think unless my colleagues have more questions, thank you. Thank you.